Kimball et al. v. Corn Exchange National Bank.

---

MARK KIMBALL ET AL.

v.

THE CORN EXCHANGE NATIONAL BANK.

1. REVENUE—INCREASE OF ASSESSMENT BY COUNTY BOARD.—The addition by the county board to the valuation of personal property in one town, without a corresponding reduction in the valuation in other towns, thereby increasing the aggregate valuation beyond what was actually necessary and incidental to a proper and just equalization, is without authority of law and void.

14

2. PAYMENT OF ILLEGAL TAX—DURESS.—The payment of a tax levied under an illegal assessment, while the warrant for its collection is in the hands of the collector, and with a view of avoiding a threatened levy and sale, cannot be deemed a voluntary payment, but made under such duress as will entitle the tax-payer to recover it back.

3. ACTION TO RECOVER TAX PAID.—In order to recover an illegal tax paid under duress, resort must be had to a suit at law. A recovery cannot be had by a proceeding in equity to restrain the collector from paying over such tax.

4. BILL IN EQUITY—MULTIPLICITY OF SUITS.—In this case the tax was paid by a bank upon its capital stock owned by individual stockholders, and it was insisted that a bill in chancery would lie, to prevent a multiplicity of suits. *Held*, that all moneys paid by the bank in excess of the legal tax cannot be said to have been paid for the stockholders, but were moneys of the bank, and could be recovered in the corporate name of the bank; that it being an illegal tax, the bank could not set up its payment for taxes as a defense against the demands of the shareholders for their dividends.

5. COLLECTOR PAYING OVER AFTER NOTICE.—The bank having given the collector notice of its rights in relation to the money in dispute, and demanded of him re-payment, he cannot, by paying over the money according to the terms of his warrant, escape his liability to an action on the part of the bank to recover the same back.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

Mr. M. R. M. WALLACE and Mr. JOSEPH F. BONFIELD, for appellants; that a writ of injunction is never employed to give affirmative relief, cited Menard v. Hood, 68 Ill. 121; Brush v. Carbondale, 78 Ill. 74.

That a court will not enjoin the collection of a tax unless the property is exempt from taxation, or where not authorized by law: Munson v. Miller, 66 Ill, 380; Adsit v. Lieb et al. 76 Ill. 198; Rep. Life Ins. Co. v. Pollak, 75 Ill. 292; Porter et al. v. R. R. I. & St. Louis R. R. Co. 76 Ill. 561; Cook Co. v. C. B. & Q. R. R. Co. 35 Ill. 460; Dows v. City of Chicago, 11 Wall. 108.

A tax having been paid, the only remedy is by action at law for its recovery: People v. Miner, 46 Ill. 374; Beckwith v. English, 51 Ill. 148; Board of Supervisors v. Manny, 56 Ill. 160; Union Bld'g Ass'n v. Chicago, 61 Ill. 447; McDaniel v. Fox, 77 Ill. 343; Feiman v. Galesburg, 48 Ill. 485; Cooley on Taxation, 546.

The payment of the tax being voluntary, it cannot be recovered back, even though it be declared illegal : Cooley on Taxation, 566; People v. Miner, 46 Ill. 384 ; Union Bld'g Ass'n v. Chicago, 61 Ill. 439; Bd. Supervisors v. Manny, 56 Ill. 160.

Messrs. HITCHCOCK, DUPEE & JUDAH, for appellee, contended that the county board had no jurisdiction to increase the aggregate valuation of all the towns, and cited Rev. Stat. 873, § 97; Rev. Stat. 875 § 105; Buck v. The People, 78 Ill. 560; Mix v. The People, 72 Ill. 241.

That an illegal tax paid to prevent a threatened levy and distraint, is not voluntarily paid: Cooley on Taxation, 569; Bradford v. The City, 25 Ill. 411; Falls v. City of Cairo, 58 Ill. 403; Preston v. City of Boston, 12 Pick. 7; Lincoln v. City of Worcester, 8 Cush. 60; Atwell v. Zuluff, 26 Mich. 119; First Nat. Bank v. Watkins, 21 Mich. 483.

That a bill in chancery may be maintained to enjoin payment of tax, and compel re-payment if it has been made: Cumberland Co. v. Webster, 53 Ill. 141; Du Page Co. v. Jenks, 65 Ill. 275; Cleghorn v. Postlewait, 43 Ill. 428; Darling v. Gunn, 50 Ill. 424; McConkey v. Smith, 73 Ill. 313.

In this case a bill in chancery is maintainable, to prevent multiplicity of suits: 2 Story's Eq. § 854; High on Injunctions, § 12; Cooley on Taxation, 545; Kerr on Injunctions, § 49; Holmes v. Baker, 16 Gray, 261; Kerr v. City of Lansing, 17 Mich. 37; Harward v. St. Clair Drain Co. 51 Ill. 130; Upington v. Oviatt, 24 Ohio St. 245; Harr v. Denniston, 19 N. H. 170.

That the collector, unless restrained, must pay over the tax according to his warrant, and no action could be maintained against him: Rev. Stat. 885, § 165; Cooley on Taxation, 560; Hill v. Figley, 25 Ill. 156; Norwell v. Tripp, 61 Me. 426; Abbott v. Tort, 2 Denio, 86; Moore v. City, 18 Pa. St. 55; Erskine v. Hohenback, 14 Wall. 613; Sheldon v. Van Boskirk, 2 N. Y. 473; Upton v. Holden, 5 Met. 360; Stetson v. Kempton, 13 Mass. 283.

BAILEY, J.  On the 18th of March, 1878, the Corn Ex-

change National Bank of Chicago, filed in the Court below its bill in chancery on its own behalf, as well as on behalf of its shareholders, against Mark Kimball, in his own proper person, and as collector of the town of South Chicago, Samuel H. McCrea, collector of Cook County, Charles R. Larrabee, treasurer of the city of Chicago, and J. Irving Pierce, treasurer of the Board of South Park Commissioners, to restrain said Kimball from paying over to the other defendants one-sixth of the taxes levied upon the shares of the capital stock of the complainant for the year 1877, and to recover the same back from said Kimball.

The bill alleges that the complainant is a duly organized National Bank, located in the town of South Chicago, having a capital of $500,000, divided into 5,000 shares of $100 each; that on the 1st of May, 1877, the town assessor of South Chicago assessed said capital stock for the purposes of taxation for the year 1877, at the aggregate sum of $170,000, the same being a fair valuation as other property in the county was assessed; that such valuation, without modification by the assessor or the town board, was returned to the county clerk; that an abstract of the assessments of the several town assessors of Cook county, including the assessment of said capital stock, was, on the 10th of August, 1877, certified by the county clerk to the auditor of public accounts, and by him laid before the State Board of Equalization at its meeting in August, 1877; that on the 20th of August, 1877, the county board of Cook county met for the purpose of equalizing the assessments of property between the several towns, and that said county board, without making any corresponding reductions in the valuation of the personal property or of the aggregate property of the other towns, added 20 per cent. to the valuation of the personal property in the town of South Chicago, as made by the town assessor, thereby increasing the valuation of complainant's capital stock to $204,000; that by the addition of said 20 per cent. the valuation of personal property in South Chicago was increased from $11,910,504.25 to $14,292,610, and the aggregate valuation of personal property in Cook county from $19,322,980 to $21,905,382.

The bill further alleges that the county clerk thereupon certified to the auditor another abstract, showing the addition of said 20 per cent., which was also laid before the State Board, but that the State Board ignoring said 20 per cent., equalized the value of the property of Cook county upon the basis of the valuation shown by the first abstract, and upon that basis added to the valuation of the personal property of Cook county 57 per cent., and other rates on other classes of property; that the auditor certified to the county clerk these additions made by the State Board, and directed said clerk to extend the taxes for the year 1877 against the property of said county accordingly, but that the clerk, in extending the taxes of South Chicago, first added to the personal property said 20 per cent., and then to the sum thereby obtained added said 57 per cent., thereby increasing the valuation of complainants' capital stock to the sum of $320,280, and on the valuation thus obtained extended the State, county, city and South Park taxes, thus making the aggregate of the taxes levied upon the shares of complainants' capital stock $13,541.55.

It is insisted in the bill that this 20 per cent. added to the valuation of the capital stock of the bank, was without authority of law, and that consequently the taxes levied upon such increased valuation, being 16⅔ per cent., or one-sixth of the total tax, was illegal and void.

It is further alleged, that for the collection of the taxes extended as aforesaid, warrants were duly made out and delivered to said Mark Kimball, collector of the town of South Chicago, and that he, upon being armed with such warrants, gave public and private notice that such taxes must be paid at once, and that in default of payment he would · levy and make the same by distress and sale; that said bank, being ignorant of said illegality in the assessment, and to save itself from levy and distress of its property and sale of its shares of stock, paid to the collector the full amount of the tax; that one-sixth of the money so paid should be held to be money had and received by Kimball for the use of the bank; and that it had given notice and demanded of him re-payment of the same, which he had refused, on the ground that the proper authorities entitled

thereto, as appeared from his warrant, had claimed that said money should be paid to them, and that said Kimball, unless restrained from so doing, would, under fear of civil or criminal liability, or both, pay over said money to said authorities.

To this bill the defendants filed a general demurrer, which being overruled by the court, the defendants elected to stand by their demurrer, whereupon a decree was entered perpetually enjoining said Kimball from paying over said one-sixth of said taxes to any person or persons, corporation or corporations, and perpetually enjoining the other defendants from collecting or receiving, or attempting to collect or receive, the same; and decreeing that said Kimball repay the said bank said one-sixth of said taxes, amounting to $2,256.92, as prayed for in said bill.

In the case of Kimball, collector, etc. v. The Merchants Savings Loan and Trust Co., decided at the present term, we have fully considered the question of the validity of so much of the taxes upon the personal property of the town of South Chicago, for the year 1877, as was levied upon the addition of 20 per cent. made by the county board to the valuation of said personal property, and have held the same to be illegal and void. In that case a bill was filed in the court below, setting up the same matters in relation to the addition by the county board of said 20 per cent. to the valuation of said personal property alleged in the bill now before us, and praying for an injunction to restrain the collection of certain taxes then unpaid, based on such 20 per cent. addition. The court below granted the prayer of the bill, and the record having been brought here by appeal, we affirmed the decree, it appearing to us that the county board in adding 20 per cent. to the valuation of said personal property, without making any corresponding deductions, thereby increasing the aggregate valuation beyond what was " actually necessary and incidental to a proper and just equalization," acted clearly and manifestly without authority of law.

In this case, the complainant having paid this tax, while the warrant for its collection was in the hands of the collector, and with a view of avoiding a threatened levy upon and sale of the shares of its capital stock belonging to its stockholders, such

payment cannot be deemed to have been voluntary, but was made under such degree of duress as will entitle the tax-payer to recover the same back : Bradford v. The City of Chicago, 75 Ill. 411; Falls v. The City of Cairo, 58 Id. 406.

In our opinion, however, in order to recover back these taxes, resort should have been had to an action at law, and not to a bill in chancery. The principle is too elementary to require discussion or illustration, that where a party has an adequate remedy at law, equity will afford him no relief. Here the complaint is, that the town collector has obtained possession of certain moneys which *ex æquo et bono*, belong to the bank. The proper remedy in such case, is the common law action for money had and received : Board of Supervisors of Stephenson County v. Manny, 56 Ill. 160. This action would have afforded the tax-payer an adequate and complete remedy, and we see no ground for an appeal to equity jurisdiction.

But while the general proposition that money paid under duress for taxes illegally assessed, may be recovered back in an action for money had and received, seems to be undisputed, it is insisted by counsel for appellee that, under the peculiar circumstances of this case, the aid of a court of equity may be invoked to prevent a multiplicity of suits.

It is claimed on the one hand, that unless the town collector is restrained by injunction from so doing, he will pay these moneys over to the several municipal corporations on whose behalf they were assessed and collected, so as to necessitate a suit at law against each one of these corporations separately. On the other hand, it is insisted that the bank, in paying these taxes, acted merely as the trustee or agent of its stockholders, and that the legal title to the moneys in question is in the stockholders and not in the bank, so as to necessitate separate actions at law on behalf of each stockholder for the recovery of his separate proportion of the same.

Without attempting to define the cases in which equity may interpose to prevent a multiplicity of suits, we think no such case exists here. Appellee having, as the bill avers, given notice to the town collector of its rights in relation to the money in dispute, and demanded of him re-payment thereof,

the collector cannot now, by paying the money over according to the terms of his warrant, escape his liability to an action on behalf of appellee to recover the same back.

It being money in his hands to which the various municipal bodies mentioned in his warrant have no right, and which equitably belongs to appellee and not to them, it is the legal duty of the collector to repay it to appellee, and a payment to the several municipal treasurers, after notice and demand by appellee, would not discharge him from his liability to perform that duty.

And we further think that a judgment in favor of appellee against the collector for these moneys duly satisfied, would be, *pro tanto*, a defense to any suit upon the official bond of the collector.

We are unable to see that any multiplicity of defendants would grow out of appellee's being compelled to seek his remedy at law.

Nor do we think any multiplicity of plaintiffs would result from the peculiar relations existing between the bank and its shareholders. It is true, that under the provisions of the revenue law the taxes upon the shares of stock in state and national banks are assessed against the stockholders and not against the bank, and that for the purpose of collecting such taxes it is made the duty of the bank or its officers to retain so much of any dividend or dividends belonging to the stockholders as shall be necessary to pay any taxes levied upon their shares of stock, respectively, until it is made to appear that such taxes are paid.

The bill alleges that it was customary for appellee and other national banks in this state, to pay all taxes legally levied against the shares of stock of the stockholders, and that to that extent the bank was the trustee of its stockholder.

If the moneys in controversy were really the moneys of the stockholders and not of the bank, and the bank was merely their agent to pay them over to the collector of taxes, we cannot see upon what principle a suit in equity, even, to recover them back, brought in the name of the bank, can be sustained.

The same rights to the money which can be made the basis of a bill in equity, will also support the equitable action for money had and received, and if such action could not be sustained on behalf of the bank, neither can this bill.

But admitting that the bank was a mere trustee, for its stockholders to retain a sufficient amount of their dividends to pay taxes and to take the same and pay it over to the tax collector, this gave the bank power to retain from its stockholders a sufficient amount of the divdends to pay taxes legally levied, and which the stockholders could be legally required to pay.  All payments made by the bank beyond this were made in its own wrong, and would be no defense to the bank against the demands of its stockholders for their dividends.

The stockholders might, notwithstanding such payment, properly demand and recover of the bank the face of their dividends, less the taxes legally levied, and they cannot be charged for moneys paid upon an illegal tax.

This money being paid by the bank of its own wrong, must be held to be money paid out of the proper funds of the bank and not out of the funds of its stockholders, and consequently, while in the hands of the collector it is the property of the bank, and it alone can bring suit to recover it back.

It seems to us that all the relief to which appellee is entitled can be reached in a single suit at law, brought by the bank as plaintiff, against the town collector as defendant, and that such relief at law is adequate, and we are therefore disposed to hold that equity has no jurisdiction.

In accordance with the views above set forth, the decree will be reversed and the bill dismissed for want of equity.

Decree reversed and bill dismissed.